GEORGE A. YUHAS (STATE BAR NO. 78678)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5759
Email: gyuhas@orrick.com

Attorneys for Defendants
CENTRAL GARDEN & PET COMPANY
and FARNAM COMPANIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SUNNY JOHANSSON, SUSAN CEDENO, WILLIAM SHELBY, KYNDELL WALSH, and KATHY AINSLEY individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CENTRAL GARDEN & PET COMPANY; and FARNAM COMPANIES, INC.,

Defendants.

Case No. CV 10-3771 MEJ

**NOTICE OF MOTION; MOTION AND MEMORANDUM OF DEFENDANTS CENTRAL GARDEN & PET COMPANY AND FARNAM COMPANIES, INC. IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS CLAIMS**

Hearing Date: December 2, 2010
Time: 10:00 A.M.
Courtroom: B – 15th Floor
Judge: The Hon. Maria Elena James

OHS West:261012131.1

NOTICE OF MOTION; MOTION AND MEMORANDUM OF DEFS. IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTER., TO DISMISS CLAIMS (CASE NO. CV 10-3771 MEJ)

## TABLE OF CONTENTS

Page

I. INTRODUCTION ... 1

II. STATEMENT OF CASE ... 2

A. Plaintiffs' Allegations ... 2

B. The Pending and Overlapping New Jersey Actions ... 3

III. ARGUMENT ... 4

A. This Action Should Be Transferred to New Jersey District Court Where Essentially Identical Class Claims Are Already Pending ... 4

B. Plaintiffs' Allegations Do Not State Valid Claims ... 7

1. Plaintiffs' Statutory Unfair Competition Claim Has No Basis, Especially As to Non-California Plaintiffs ... 7

2. Plaintiffs Have Not Stated a Claim for Breach of the Implied Warranty of Merchantability ... 9

3. Plaintiffs' Statutory Warranty Claim is Patently Deficient ... 11

4. Plaintiffs' Have Not Alleged a Violation of the California Consumer Legal Remedial Act Generally and Especially as to Non-California Plaintiffs ... 12

5. There is No Stand-Alone Claim for Punitive Damages ... 13

IV. CONCLUSION ... 14

## TABLE OF AUTHORITIES

**Page(s)**

*Bailey* v. *Monaco Coach Corp.*,
350 F. Supp. 2d 1036 (N.D. Ga. 2004) ........ 11

*Bates* v. *Dow Agroscience, LLC*,
544 U.S. 431 (2005) ........ 8

*Cattie* v. *Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ........ 13

*Church of Scientology* v. *California v. United States Dept. of Army*,
611 F. 2d 738 (9th Cir. 1979) ........ 5

*In re Cuyahoga Equip. Corp.*,
980 F. 2d 110 (2d Cir. 1992) ........ 4

*Ferens* v. *John Deere Co.*,
494 U.S. 516 (1990) ........ 4

*Gerber Products Co.*,
667 F. Supp. 2d 171 (D. Mass 2009) ........ 5

*Goggins* v. *Alliance Capital Mgmt. LP*,
279 F. Supp. 2d 228 (S.D.N.Y. 2003) ........ 5

*Golden* v. *Gorno Bros., Inc.*,
410 F. 3d 879 (6th Cir. 2005) ........ 12

*Grenier* v. *Vermont Log Bldgs., Inc.*,
96 F. 3d 559 (1st Cir. 1996) ........ 11

*Hoffman* v. *Medquist*,
2005 U.S. Dist. LEXIS 29995 (N.D. Ga. 2005) ........ 5

*Kearns* v. *Ford Motor Company*,
567 F. 3d 1120 (9th Cir. 2009) ........ 7, 13

*Kelly* v. *Fleetwood Enterprises Inc.*,
377 F. 3d 1034 (9th Cir. 2004) ........ 11, 12

*Kent* v. *Hewlett-Packard Company*,
2010 U.S. Dist. LEXIS 76818 (N.D. Cal. July 6, 2010) ........ 7, 13

*Koster* v. *Lumbermans Mut. Cas. Co.*,
330 U.S. 518 (1947) ........ 5

*Lou* v. *Belzberg*,
834 F. 2d 730 (9th Cir. 1987) ........ 5

*Martin* v. *South Carolina Bank*,
811 F. Supp. 679 (M.D. Ga. 1992) ........ 5

OHS West:261012131.1

- ii -

NOTICE OF MOTION; MOTION AND MEMORANDUM OF DEFS. IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTER., TO DISMISS CLAIMS (CASE NO. CV 10-3771 MEJ)

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*McCarthy* v. *Johnson & Johnson*,
2010 U.S. Dist. LEXIS 64902 (E.D. Cal. June 29, 2010) .......... 10

*Merrill Lynch Pierce Fenner & Smith, Inc.* v. *Haydu*,
675 F. 2d 1169 (11th Cir. 1982) .......... 5, 7

*Morgan* v. *Harmonix Music Sys.*,
2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) .......... 13

*Parkinson* v. *Hyundai Motor America*,
258 F.R.D. 580 (C.D. Cal. 2008) .......... 9

*Schimmer* v. *Jaguar Cars, Inc.*,
384 F. 3d 402 (1st Cir. 2004) .......... 11

*Stein v. Immelt,*
2010 U.S. Dist. LEXIS (D. Conn. Feb. 18, 2010) .......... 5

*Stickrath* v. *Globalstar*,
527 F. Supp. 2d 992 (N.D. Cal. 2008) .......... 8

*Taylor AG Industries* v. *Pure-Gro*,
54 F. 3d 555 (9th Cir. 1995) .......... 9, 11

*The NVIDIA GPU Litigation*,
2009 U.S. Dist. LEXIS 108500 (N.D. Cal. Nov. 19, 2009) .......... 10, 11

*Tietsworth* v. *Sears Roebuck & Co.*,
2010 U.S. Dist. LEXIS 44053 (N.D. Cal. March 31, 2010) .......... 7

*Ventress* v. *Japan Airlines*,
486 F. 3d 1111 (9th Cir. 2007) .......... 4

*Ward* v. *IPEX, Inc.*,
2009 U.S. Dist. LEXIS 11040 (C.D. Cal. Feb. 4, 2009) .......... 10

*Weber* v. *Basic Comfort Inc.*,
155 F. Supp. 2d 283 (E.D. Pa. 2000) .......... 5

*Wiley v. Gerber Products Co.*,
*667 F. Supp. 2d 171* (D. Mass. 2009) .......... 5

*Wyndham Associates* v. *Bintliff*,
398 F. 2d 614 (2d Cir.), cert. denied (1968) .......... 4

**STATE CASES**

*All West Electronics, Inc. v. M-B-W, Inc.*
64 Cal. App. 4th 717 (1998) .......... 9

OHS West:261012131.1

- iii -

NOTICE OF MOTION; MOTION AND MEMORANDUM OF DEFS. IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTER., TO DISMISS CLAIMS (CASE NO. CV 10-3771 MEJ)

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Blanco* v. *Baxter Healthcare Corp.*,
158 Cal. App. 4th 1039 (2008) .......... 9, 10

### DOCKETED CASES

*Arlandson* v. *Hartz Mountain Corp. et al.*,
No. 10cv1050 .......... 4

*Kristy Snyder, et al.* v. *Farnam Companies, Inc., et al.*,
No. 10cv1391 (filed March 16, 2010) .......... 3

*McDonough* v. *Bayer Healthcare LLC*,
No. 10-cv-00442 .......... 4

*Smith v. Merial Ltd. et al.*,
No. 10cv00439 (*Id.*) .......... 4

### FEDERAL STATUTES

Federal Rules of Civil Procedure
9(b) .......... 1
12(b)(3) .......... 1
12(b)(6) .......... 1

7 U.S.C. 1136 .......... 8

15 U.S.C. § 2310) .......... 1, 11

15 U.S.C. § 2310(d)(3) .......... 11

28 U.S.C. § 1404(a) .......... 1, 4

### STATE STATUTES

Cal. Civ. Code § 3294 .......... 14

Cal. Com. Code § 2314(2) .......... 10

Notice is hereby given that on December 2, 2010 at 10:00 a.m. in Department B of the above-entitled Court, Defendants Central Garden & Pet Company and Farnam Companies, Inc. shall move for an order transferring the present action to the United States District Court in New Jersey or, in the alternative, dismissing claims asserted herein as set forth below.

The motion to transfer this action is being made pursuant to 28 U.S.C. § 1404(a) and on the grounds that such transfer would be in the interests of justice and for the convenience of the parties. There are currently several purported class actions pending in the New Jersey District Court presenting the same issues presented by the present case, including a purported class action against the same defendants on behalf of the same class alleging the same injury. The motion to dismiss is being made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(3) and 12(b)(6) and seeks dismissal of Plaintiffs' claims for violation of California Business & Professions Code Section 17200, the California Consumer Legal Remedies Act, the Magnuson-Moss Warranty Act (15 U.S.C. § 2310) and the claims for breach of implied warranties and punitive damages for the reasons below.

## SUPPORTING MEMORANDUM

## I. INTRODUCTION

In this action, one California and four non-California plaintiffs allege that flea and tick products sold by Defendants caused adverse reactions in their pets. On that basis, they purport to assert class action claims under California consumer and unfair competition statutes, federal and common law warranty claims, and a product liabilities claim. They also append a stand-alone claim for punitive damages for good measure.

This case is a transparent attempt to duplicate and split class claims already being litigated elsewhere. Plaintiffs' counsel is already suing these same defendants on behalf of the same purported class for the same supposed product defects in the United States District Court in New Jersey. That action, along with the several other cases involving these same product and class issues, has been pending for months. The obvious and virtually complete duplication of this litigation cries out for a transfer of this case to the New Jersey District Court, especially because only one of the five named plaintiffs in this case has any alleged connection whatsoever with

California.

If this action is not transferred, Plaintiffs' claims should be dismissed. The statutory unfair competition and consumer misrepresentation claims do not provide the requisite particularity and fail to allege essential elements. There is certainly no basis for any of the non-California plaintiffs to assert such claims since neither they nor the alleged sales or supposed representations have any alleged connection to California. The implied warranty claim fails because Plaintiffs did not purchase products from Defendants and therefore do not have the privity needed to assert implied warranty claims. The federal statutory warranty claim fails because it is dependent on the legally insufficient implied warranty claim and Plaintiffs have failed to identify the injury required to bring that claim in this Court. There is no alleged basis for Plaintiff's stand-alone claim for punitive damages.

## II. <u>STATEMENT OF CASE</u>

### A. <u>Plaintiffs' Allegations</u>

The five named plaintiffs are pet owners. Plaintiff Sunny Johansson ("Johansson") is the only California plaintiff. The other named plaintiffs are located in Ohio, Texas, Florida and North Carolina.

The focus of Plaintiffs' claims is a flea and tick treatment (Cmplt. ¶¶ 4-8) made by Farnam Companies ("Farnam") and sold under the brand name Bio Spot. Farnam is located in Arizona. This product is regulated by the Environmental Protection Agency ("EPA") and has been in the marketplace for years. Defendant Central Garden & Pet Company ("Central") is Farnam's parent company and is located in California. (*Id.* at ¶¶ 5-6).

Plaintiffs allege that each of them used Bio Spot to treat their pets for flea and tick problems. Each plaintiff alleges that the treatment caused some type of adverse reaction. (*Id.* at ¶¶ 13-31). These alleged reactions varied substantially. For example, Johansson, the California plaintiff, alleges that after she treated her cat with Bio Spot, the cat had a seizure but then recovered fully after a few days. (*Id.* at ¶¶ 13-17). Another plaintiff, Kyndell Walsh, alleges that she applied Bio Spot to her two cats. Although Kyndell alleges that she washed off the Bio Spot product immediately after it was applied and neither cat exhibited any adverse symptoms

thereafter, one of her cats did not return home the following morning and was later found dead. (*Id.* at ¶¶ 28-29). She attributes this result to Bio Spot. The remaining three plaintiffs, all non-California residents, allege significant problems with their dogs or cats which they attribute to Bio Spot.

The Plaintiffs purport to assert claims both individually and on behalf of a nationwide class of persons who purchased flea control products made or marketed by the defendants which contain Pyrethrin or Pyrethroids, including Permethrin, which is alleged to be the active ingredient in Bio Spot. (*Id.* at ¶¶ 36-37, 52).

**B. The Pending and Overlapping New Jersey Actions**

The present action is only one of several purported class actions brought against makers of flea and tick products in the aftermath of an EPA report addressing such products.[1] (G. Yuhas Dec. ¶¶ 2-5). All of these other cases are pending in United States District Court in New Jersey.

Most directly relevant, two purported class actions were filed earlier this year against Farnam, Central and another Central affiliate directed at the same Bio Spot product and same purported class that is alleged by the Plaintiffs here. These two actions have now been incorporated into a single complaint. *See Kristy Snyder, et al. v. Farnam Companies, Inc., et al.*, No. 10cv1391 (Yuhas Dec. Exh. A). The *Snyder* case alleges claims of breach of express and implied warranties, unjust enrichment, and violation of New Jersey and Illinois consumer protection statutes. Plaintiffs' counsel in this action is familiar with the *Snyder* case because they are also counsel of record in that action. (*Id.*).

Like the present case, the *Snyder* case purports to be on behalf of a purported class of purchasers of flea and tick products using Pyrethroid sold by Central or Farnam. (G. Yuhas Dc. Exh. A at ¶¶ 25-26). As is true of the present case, the gist of the plaintiffs' complaint in *Snyder* is that the flea and tick products have caused an adverse reaction in some unspecified percentage of pets using those products. The *Snyder* case was filed on March 16, 2010 and a

---

[1] The Declaration of George A. Yuhas is submitted with this motion in support of the motion to transfer and to provide information regarding the other pending actions.

motion to dismiss has been fully briefed and is pending. (G. Yuhas Dec. at ¶¶ 2, 4).

In addition to the *Snyder* case, no fewer than nine additional actions have been filed in the New Jersey District Court against other makers of flea and tick products (G. Yuhas Dec. ¶ 5). Six of these actions against the defendants have been incorporated into a single consolidated class action complaint. *See Arlandson v. Hartz Mountain Corp. et al.*, No. 10cv1050. (*Id.*). Another of these actions has been incorporated into the *Snyder* complaint. Two additional class actions are pending. *See McDonough v. Bayer Healthcare LLC*, No. 10-cv-00442 and *Smith v. Merial Ltd. et al.*, No. 10cv00439 (*Id.*).

All of these New Jersey cases have been assigned to District Judge William Martini. (*Id.* at ¶ 7). Motions to dismiss have been filed and are pending in each of these cases. (*Id.*)

## III. <u>ARGUMENT</u>

### A. <u>This Action Should Be Transferred to New Jersey District Court Where Essentially Identical Class Claims Are Already Pending</u>

Courts have broad discretion to order a transfer of an action under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice. *Ventress v. Japan Airlines*, 486 F. 3d 1111, 1118 (9th Cir. 2007). In making the determination to transfer an action, courts must weight a number of case-specific factors to determine which court would be more convenient and appropriate. *Id.*; *In re Cuyahoga Equip. Corp.*, 980 F. 2d 110, 117 (2d Cir. 1992).

Courts commonly recognize that transferring a case is appropriate and in the interest of justice where doing so would avoid duplicate actions involving the same issues. *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990); *Wyndham Associates v. Bintliff*, 398 F. 2d 614, 618-619 (2d Cir.), <u>cert.</u> <u>denied</u>, 393 U.S. 977 (1968). Such transfers avoid the need for duplicative discovery and motions and potential inconsistent rulings. As the Court explained in *Ferens*, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that Section 1404(a) was designed to prevent." 494 U.S. at 531.

Transfers are especially appropriate where the cases in question are putative class actions. In such cases, the plaintiffs' choice of forum is given limited weight. *Koster v. Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *Lou v. Belzberg*, 834 F. 2d 730, 739 (9th Cir. 1987). As the Supreme Court explained in a derivative action context, "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster*, 330 U.S. at 524.

Courts have recognized that the benefits of avoiding duplicating class action in different forums provide a compelling reason to grant a transfer request. The interests of justice are greatly furthered by avoiding competing and duplicative class actions. For this reason, the existence of related actions in another district is an important factor favoring transfer. *Martin v. South Carolina Bank*, 811 F. Supp. 679, 685 (M.D. Ga. 1992); *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2000) (["The presence of a related case] is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite.").

For these reasons, courts have commonly exercised their discretion to transfer later-filed putative class or other representative actions to another district where earlier actions involving the same putative class and parties is already the pending. *See, e.g., Stein v. Immelt,* 2010 U.S. Dist. LEXIS (D. Conn. Feb. 18, 2010); *Wiley v. Gerber Products Co.*, 667 F. Supp. 2d 171 (D. Mass. 2009); *Hoffman v. Medquist*, 2005 U.S. Dist. LEXIS 29995 (N.D. Ga. 2005); *Goggins v. Alliance Capital Mgmt. LP*, 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003).

The fact that this action was filed after the New Jersey case further supports a transfer. Where actions involving the same parties and issues are pending, in different district courts, the first-filed action is generally given priority. *Church of Scientology v. California v. United States Dept. of Army*, 611 F. 2d 738, 750 (9th Cir. 1979). Indeed, the priority of the prior case should generally be disregarded only in compelling circumstances. *Id.*; *Merrill Lynch Pierce Fenner & Smith, Inc. v. Haydu*, 675 F. 2d 1169, 1174 (11th Cir. 1982).

Here, the overwhelming predominance of factors supports the transfer of this action to New Jersey. Both this case and the earlier New Jersey *Snyder* case are brought on behalf of the same putative class. In both cases, the gist of the claims is that the products in question have caused adverse impacts on some portion of pets using such products. In both cases, the litigation will involve issues of the warnings provided by the defendants, the effectiveness and workings of the products in question, and whether the products violated any legal duty.

A transfer of this action would avoid an otherwise unavoidable duplication of effort by the parties and the courts. Absent transfer, there will be duplicative and parallel motions and discovery. Rather than one motion for class certification, there will be two. Rather than producing documents once, defendants would need to do so twice. Rather than a single set of disclosures, there will be two.

Moreover, absent transfer, there is a risk of inconsistent adjudications. One court might dismiss claims that the other court might let proceed. One court might deny certification while the other court might, at least in theory, let at least some sort of limited class proceed. Defendants should not be forced to run the gauntlet of two competing class cases and allow the class plaintiffs to pick and choose which case will proceed on behalf of the class, depending on which forum generates the most positive result.

In the highly unlikely event that both courts were to certify the same class in two separate actions, there would be even greater likelihood of confusion. Class members could receive notices in two separate cases. Moreover, since settlement of either case could not happen absent settlement of all class claims, having two cases in two separate forums makes no sense.

While the named plaintiffs in the two cases have presented some slightly different legal theories, such differences are immaterial. Both cases present warranty claims and claims under state consumer statutes. The present action includes a products liability claim that is not expressly alleged in the New Jersey action but that products liability claim is largely subsumed in the warranty claims and does not present any significant additional factual issues.

Nor do the residences or locations of the parties favor venue in this court. As noted above, while a plaintiff's choice of venue is normally accorded some deference, that

consideration is entitled to little or no weight when the case is brought on behalf of a putative nationwide class. There is especially no reason to give deference to the plaintiffs' choice of forum in this case because all but one of the plaintiffs are located outside of California.

The fact that one of the Defendants, Central, is located in California is also largely irrelevant. Central will play, at most, a tangential role in the litigations. It is simply the parent company of Farnam, which is located in Arizona and which actually makes and markets the Bio Spot product. (G. Yuhas Dec. at ¶ 9). For this reason, any meaningful discovery relating to Bio Spot will not occur in California but in Arizona. The witnesses most knowledgeable will be deposed outside of California. *Id.*

While the pendency of the related *Snyder* case is enough to establish that transfer would be in the interests of justice, it is also significant that there are several other pending actions in the New Jersey court involving the same issues. That court will necessarily develop a greater familiarity with the underlying issues. This consideration further supports a transfer of this case to that court.

### B. <u>Plaintiffs' Allegations Do Not State Valid Claims</u>

#### 1. <u>Plaintiffs' Statutory Unfair Competition Claim Has No Basis, Especially As to Non-California Plaintiffs</u>

Plaintiffs' first claim is for violation of the California Unfair Competition Law ("UCL") as provided in California Business & Professions Code Section 17200. (Cmplt. ¶¶ 64-69). The basis for this claim is Plaintiffs' conclusory allegation that Defendants allegedly knew that the Bio Spot product "posed an unreasonable risk of harm to pets" and yet knowingly failed to disclose such information and thereby "explicitly and implicitly represented that such products were safe and would not cause harm to pets." (*Id.* at ¶ 67).

Plaintiffs' allegations fail to provide the particularity required for this claim. The sole basis for the UCL claim is the contention that Defendants knowingly and intentionally misrepresented and failed to disclose risks associated with the product. Thus, their core contention is that Defendants are guilty of a deceptive business practice proscribed by Section 17200 However, it is settled that such a claim must be alleged with particularity. Federal Rule of

Civil Procedure 9(b); *Kearns v. Ford Motor Company*, 567 F. 3d 1120, 1125-1127 (9th Cir. 2009); *Kent v. Hewlett-Packard Company*, 2010 U.S. Dist. LEXIS 76818 at * 33-34 (N.D. Cal. July 6, 2010); *Tietsworth v. Sears Roebuck & Co.*, 2010 U.S. Dist. LEXIS 44053 at * 32 (N.D. Cal. March 31, 2010).

In *Stickrath v. Globalstar*, 527 F. Supp. 2d 992 (N.D. Cal. 2008), for example, the plaintiffs sought to base an UCL claim on allegations that the defendant made misrepresentations and failed to disclose information regarding the quality of its service. While the *Stickrath* court recognized that Rule 9(b)'s particularity requirements would not apply to a UCL claim based on something other than deceptive conduct, the court concluded that plaintiffs' core contention sounded in fraud and implicated Rule 9(b):

> Plaintiffs allege that Defendant failed to disclose material information about the quality of its service and also made affirmative misrepresentations about that quality. The alleged omissions and misrepresentations go hand in hand with all of the allegations related to how Defendants advertised its service.

*Id.* at 998.

Similarly, the gist of Plaintiffs' UCL claim in this case is that Defendants knowingly misrepresented the quality of the products in question. Yet, Plaintiffs provide no particularized allegations. They do not allege specifically what Defendants have stated in their advertising or label about the safety or risks of using the products. They provide no details regarding the context of the alleged statements. Nor do they provide details regarding their exposure to the alleged statements or reliance on any statements. Instead, they simply provide conclusory allegations that Defendants knowingly failed to disclose the vague notion that the products carried risk. Such conclusory allegations are not sufficient. *Stickrath v. Globalstar*, 527 F. Supp. 2d at 998.

The need for particularity is especially great in the circumstances of this case because of the great likelihood that Plaintiffs' claims are preempted, in whole or in part. Under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. 1136 et seq. ("FIFRA"), state law claims are preempted to the extent that such claims would require packaging or label requirements in addition to or different from those required under FIFRA. *Id.* at 1136v(b); *Bates*

*v. Dow Agroscience, LLC*, 544 U.S. 431, 447 (2005). While Plaintiffs' vague allegations try to obscure the real basis of their claims and the possible application of preemption, the supposed non-disclosure and misrepresentations are inextricably bound up with the disclosures on the labels and packaging. As such, such claims are almost certainly preempted. *Taylor AG Industries v. Pure-Gro*, 54 F. 3d 555, 561 (9th Cir. 1995). However, the absence of particularized allegation makes it impossible to determine whether Plaintiffs' UCL claims are, in fact, based on anything outside the scope of FIFRA preemption.

There is also no basis for the efforts by the non-California plaintiffs to assert a claim under the UCL. While non-residents are not per se ineligible to raise such claims, they cannot do so unless there are allegations that establish that the challenged conduct has some sufficient connection with California. *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 590 (C.D. Cal. 2008). Plaintiffs have provided no allegation that connect the claims of non-California plaintiffs to actions in California. The non-California residents presumably made their purchase outside of California. Thus, any representative or allegedly ineligible disclosures would have occurred when those purchases occurred. Similarly, any reliance and injury would have occurred outside of California and in their home states. Nor is there any basis to infer that any supposed misrepresentations emanated from California. And, given that Farnam is located in Arizona, not California, the absence of any California nexus is even more obvious.

**2. Plaintiffs Have Not Stated a Claim for Breach of the Implied Warranty of Merchantability**

Plaintiffs' second claim is for breach of the implied warranty of merchantability. Plaintiffs allege that the flea and tick products sold by Defendants are not merchantable because "they can cause pets to become ill or die when the products are used in accordance with the instructions on the product." (Cmplt. ¶ 72).

"Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability." *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058 (2008). And, "there is no privity between the original seller and subsequent purchaser who is in no way a party to the original sale. *All West Electronics, Inc. v.*

*M-B-W, Inc.*, 64 Cal. App. 4th 717, 725 (1998).

By reason of this privity requirement, a retail consumer cannot assert claims for breach of the implied warranty of merchantability from a maker of products where the plaintiff did not purchase such products from the manufacturer. *See McCarthy v. Johnson & Johnson*, 2010 U.S. Dist. LEXIS 64902 at * 16 (E.D. Cal. June 29, 2010) (plaintiff could not maintain the merchantability claim against maker of product who sold that product to the hospital and not to plaintiff); *The NVIDIA GPU Litigation*, 2009 U.S. Dist. LEXIS 108500 at * 21-23 (N.D. Cal. Nov. 19, 2009); *Ward v. IPEX, Inc.*, 2009 U.S. Dist. LEXIS 11040 * 10-13 (C.D. Cal. Feb. 4, 2009); *Blanco*, 158 Cal. App. 4th at 1058.

In this case, Plaintiffs do not and cannot allege that they purchased the flea and tick product in question from the Defendants. Rather, the only inference that can reasonably be drawn from the Complaint is that such purchases were made at retail outlets. As such, Plaintiffs are not in privity with Defendants and cannot assert a claim for the implied warranty of merchantability against them.

Moreover, Plaintiffs' implied warranty claim misconceives the concept of merchantability. A product is deemed to breach the implied warranty of merchantability if it is not fit for the ordinary purpose for which such goods are used. Cal. Com. Code § 2314(2)(c). Here, the "ordinary purpose" of the product in question is to kill fleas and ticks. There is no allegation that the product was not effective for this purpose.

Rather than considering the ordinary and intended purpose of the product in question, Plaintiffs premise their claim on the contention that a product became unmerchantable if it caused adverse side effects on the pet, regardless of what risks were disclosed or how rare that side effect might be. However, the occurrence of such side effects does not render the product unfit for its intended purpose. Otherwise, every medicine or product that ever caused an adverse reaction would give rise to an implied warranty claim, no matter what warnings were provided, how effective that product might be or how rare the incidences of adverse reactions.

Of course, Plaintiffs' implied warranty claim might be more limited and premised on a frequency or type of side effects beyond the warnings and disclosures contained in the

product's packaging and labels. However, Plaintiffs' current allegations do not purport to state such a claim. If they had attempted to allege such a claim, it would likely be preempted under FIRFRA. *Grenier v. Vermont Log Bldgs., Inc.*, 96 F. 3d 559, 561 (1st Cir. 1996) (recognizing that warranty claim based on inaccuracy of statements on label are preempted); *Taylor AG Indus. v. Pure-Gro*, 54 F. 3d 555, 563 (9th Cir. 1995).

**3. Plaintiffs' Statutory Warranty Claim is Patently Deficient**

Plaintiffs' third claim is for breach of warranty under the Magnuson-Moss Warranty Act (the "Act"). 15 U.S.C. § 2310 et. seq. However, this claim fails for two reasons. First, the only warranty specifically identified in Plaintiffs' claim under the Act is the implied warranty of merchantability. Cmplt. ¶ 80. However, as discussed above, that claim fails for lack of privity. A warranty claim that fails under the applicable state law cannot support a claim under the Act. *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1048 (N.D. Ga. 2004), aff'd. 108 Fed. Appx. 893, (11th Cir. 2006) (warranty claim under the Magnuson-Moss Act failed where claims did not exert under state warranty law). *See also The NVIDIA GPU Litigation*, 2009 U.S. Dist. LEXIS 108500 at * 25.

Second, insofar as Plaintiffs purport to pursue class relief on that claim, they do not meet express statutory prerequisites. Pursuant to 15 U.S.C. § 2310(d)(3), no class claim for violation of the Act can be brought in federal court "if the action is brought as a class action, and the number of named plaintiffs is less than 100." Here, Plaintiffs purport to bring their case as a class action but do not have anywhere near the requisite number of named plaintiffs.

Nor have Plaintiffs stated individual claims under the Act. Section 2310(d)(3)(b) provides that federal courts cannot accept jurisdiction of such claims if the amount in controversy is less than $50,000 computed on the basis of all individual claims made in the action. In making that determination, courts look to the face of the complaint. If it appears to a legal certainty that the claim cannot meet the statutory threshold, it cannot be pursued. *Kelly v. Fleetwood Enterprises Inc.*, 377 F. 3d 1034, 1037 (9th Cir. 2004).

Here, the five individual plaintiffs cannot colorably assert that their claims have an aggregate value in excess of $50,000. Courts have routinely rejected arguments that the $50,000

threshold has been met even in cases involving warranty claims involving claims involving products of much higher value than the flea and tick products in this case. In *Schimmer v. Jaguar Cars, Inc.*, 384 F. 3d 402 (1st Cir. 2004), for example, the plaintiff sued under the Act for breach of warranty relating to a $69,000 car. The court held that there was no claim under the Act because the damages for breach would not be far less than the value of the car and would not even colorably exceed $50,000. *See also Kelly v. Fleetwood Enterprises Inc.*, 377 F. 3d at 1040 (claim for breach of warranty involving a motor home did not meet $50,000 threshold); *Golden v. Gorno Bros., Inc.*, 410 F. 3d 879, 883 (6th Cir. 2005).

Here, the product in question is a relatively inexpensive flea and tick treatment. Thus, any warranty damages would certainly be de minimus given the nature and value of the product in question. Nor have Plaintiffs provided any allegations that could support an argument that additional damages have been incurred that would increase the aggregate recoverable damage amount beyond the $50,000 minimum. Even assuming that costs of caring for the affected pets would be recoverable, the allegations do not remotely support an inference that such costs totaled $50,000 or more. Plaintiffs also cannot try to reach this threshold by arguing for other types of damages. Non-economic or punitive damages are not recoverable for breach of warranty and cannot be towards satisfaction of the $50,000 amount in controversy requirements. *Kelly*, 377 F. 3d at 1039. In short, there is no basis for a federal warranty claim.

**4.     Plaintiffs' Have Not Alleged a Violation of the California Consumer Legal Remedial Act Generally and Especially as to Non-California Plaintiffs**

Plaintiffs' sixth claim is for violation of the California Consumer Legal Remedies Act ("CLRA"). Plaintiffs do not identify how Defendants have committed such violations except to quote portions of the CLRA which proscribe various types of misrepresentations concerning consumer products. (Cmplt. ¶ 90). For example, Plaintiffs allege that, in some unexplained way, Defendants misrepresented this "source, sponsorship, approval or certification" of the goods. Plaintiffs further allege, without detail, that Defendants represented that the goods "are of a particular standard, quality or grade ...." (*Id.*)

Plaintiffs' attempt to state a claim under the CLRA falls short in several respects.

First, the non-California plaintiffs allege no basis to pursue such a claim. There is no allegation that they bought goods in California, relied on any alleged misrepresentations in California or suffer any injury in California. Nor do they allege facts that would support an inference that any alleged misrepresentations emanated from California. There is no basis for them to invoke the protection of this California consumer statute. *Morgan v. Harmonix Music Sys.*, 2009 U.S. Dist. LEXIS 57528 at * 6-7 (N.D. Cal. July 7, 2009) (dismissing CLRA claims by non-California residents where complaint failed to allege what conduct took place in California or how plaintiffs were injured in California).

Second, a claim under the CLRA based on supposed misrepresentations must be alleged with particularity. *Kearns v. Ford Motor Company*, 567 F. 3d 1120, 1125 (9th Cir. 2009); *Kent v. Hewlett Packard Co.*, 2010 U.S. Dist. LEXIS 76818 at * 23. Here, plaintiffs provide no such particularized allegations. They do not identify the specific alleged misrepresentation that form the basis of their claim or the relevant context. Instead, Plaintiffs simply reference the underlying statute and allege in conclusory fashion that misrepresentations were made in violation of one or more of these provisions.

Third, the CLRA is not violated unless the underlying sales of goods resulted from the alleged misrepresentations. Cal. Civil Code 1780(a)(1), (5)(d). Thus, reliance is an essential element of any such claim. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation."). Plaintiffs have not alleged any such reliance.

Fourth, as discussed above in the context of Plaintiffs' UCL claim, because the alleged misrepresentations are likely to be an inextricable part of label and package information provided with the underlying product, it is likely that the CLRA claim is preempted. While the vague nature of Plaintiffs' allegations make it difficult to know for certain, it is hard to see how alleged misrepresentations or non-disclosures regarding pet safety issues that Plaintiffs may have seen or relied on would be based on something other than the EPA approved label disclosures.

**5. There is No Stand-Alone Claim for Punitive Damages**

Plaintiffs' seventh claim purports to be a claim for punitive damages. However, there is no stand-alone claim for punitive damages. Rather, any such claim must arise from a non-contract based claim where a defendant is guilty of fraud, malice or oppression. Cal. Civ. Code § 3294.

Plaintiffs allege no facts that provide any basis for their punitive damage "claim." While they include statutory claims based on the contention that Defendants made unspecified misrepresentations, Plaintiffs do not assert a claim for common law fraud that could support a punitive damages claim. Nor do Plaintiffs allege any facts that constitute malice or oppression. For this reason, the punitive damages claim should be dismissed.

## IV. CONCLUSION

For the reasons set forth above, this Court should transfer this case to the United States District Court of New Jersey in the interest of justice and to avoid needless duplication. In alternative, this Court should grant Defendants' motion to dismiss Plaintiffs' statutory unfair competition and consumer misrepresentation claims, the implied and statutory warranty claims, and the claim for punitive damages.

Dated: October 22, 2010

GEORGE A. YUHAS
ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ George A. Yuhas
GEORGE A. YUHAS
Attorneys for Defendants
CENTRAL GARDEN & PET COMPANY
And FARNAM COMPANIES, INC.

OHS West:261012131.1

- 14 -

NOTICE OF MOTION; MOTION AND MEMORANDUM OF DEFS. IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTER., TO DISMISS CLAIMS (CASE NO. CV 10-3771 MEJ)