UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUNNY JOHANSSON, SUSAN CEDENO, WILLIAM SHELBY, KYNDELL WALSH, and KATHY AINSLEY, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>CENTRAL GARDEN & PET COMPANY, and FARNAM COMPANIES, INC.,<br><br>       Defendants. | Civ. No. 10-6372<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.**:

      This matter comes before the Court on Defendants Central Garden & Pet Company ("Central Pet") and Farnam Companies, Inc. ("Farnam") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiffs' Complaint ("Complaint"), originally filed in the Northern District of California and transferred to this District on December 12, 2010, brings a putative class action on behalf of themselves and other purchasers and users of "spot on" flea and tick

1

treatments for dogs and cats manufactured by Defendants.  Defendants manufacture various flea and tick control pesticide products ("Products") that are sold over the counter and contain Pyrethrins, or the synthetic version of the same chemical, Pyrethroids. (Compl. ¶ 37.)  The Products are considered "spot on" flea and tick treatments because the pesticide is applied directly to one or more localized areas on the body of the pet. (*See* Compl. ¶ 44.)

On May 5, 2009, as updated January 10, 2010, the Environmental Protection Agency ("EPA"), which regulates the safety of pesticides, issued an advisory, reporting that it is "intensifying its evaluation of spot-on pesticide products for flea and tick control due to recent increases in the number of reported adverse reactions in pets treated with these products." (Compl. ¶ 44.)  Additionally, on August 3, 2009, the national Humane Society of the United States ("HSUS") released public comments to the EPA addressing the dangers posed by flea and tick products.  The HSUS comments stated that, "[o]ver the past decade, the HSUS has received hundreds of complaints regarding severe reactions and even death of companion animals caused by many flea and tick products." (Compl. ¶ 46.)

Plaintiffs allege that Defendants' Products are unsafe because they sickened and, in some cases, killed their pets. (Compl. ¶ 2.)  The Complaint includes five named Plaintiffs from California, Florida, North Carolina, Ohio, and Texas. (Compl. ¶¶ 4-8.) Each Plaintiff alleges that Defendants' Products caused some type of adverse reaction in their pet. (Compl. ¶¶ 13-31.)

Plaintiffs, on behalf of themselves and other purchasers of Defendants' Products, bring the following causes of action: (1) violation of the California Unfair Competition Law (Count One); (2) breach of implied warranty of merchantability (Count Two); (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) (Count Three); (4) strict products liability (Count Four, mislabeled Count Five); (5) violation of the California Consumer Legal Remedies Act, Cal Civ. Code § 1770(a) (Count Five, mislabeled Count Six); and (6) punitive damages pursuant to Cal. Civ. Code § 3345 (Count Six, mislabeled Count Seven).[1]

Defendants filed the instant motion to transfer or, in the alternative, to dismiss the claims on October 22, 2010, while this matter was pending in the Northern District of California. The Northern District of California granted the motion to transfer but did not address Defendants' arguments regarding dismissal. The Court now addresses this pending motion to dismiss, as supplemented by Defendants' January 24, 2011 Letter Brief (Docket Entry No. 32) submitted to the Court.[2]

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

---

[1] In addition to this action, multiple putative class actions have been filed against various other "spot on" flea and tick treatment manufacturers in this Court. The Court has issued parallel opinions on the pending motions to dismiss in the following flea and tick treatment cases: *Smith v. Merial*, Civ. No. 10-439; *McDonough v. Bayer Healthcare,* Civ. No. 10-442; *Arlandson v. Hartz Mountain Corp.*, Civ. No. 10-1050; and *Snyder v. Farnam*, Civ. No. 10-1391.

[2] Defendants' Letter Brief additionally refers to arguments made in Defendants' moving brief in one of the parallel flea and tick treatment actions, *Snyder v. Farnam*, Civ. No. 10-1391.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[3] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d

---

[3] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

4

Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

### B. Preemption Under FIFRA

Defendants contend that Plaintiffs' claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 ("FIFRA"), as Plaintiffs' claims for relief seek to alter the EPA-approved labels and package inserts of Defendants' Products. (Defs.' Jan. 24 Letter Br. at 4.) FIFRA provides a comprehensive scheme for regulating labels used on pesticides such as Defendants' Products. When a pesticide manufacturer applies to the EPA for registration of a pesticide product, the manufacturer "must submit a proposed label to [the] EPA as well as certain supporting data." *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 438 (2005) (citing 7 U.S.C. § 136a). The EPA then determines what warnings or precautions must appear on the product's label, and notifies the manufacturer of its labeling decision. 7 U.S.C. § 136a(c). Under FIFRA, the EPA is essentially given full control to regulate labels used on pesticides. While state governments can regulate pesticide labeling in conjunction with the federal government, they are expressly prohibited from "impos[ing] or

5

continu[ing] in effect any requirements for labeling or packaging in addition to or different from" those established by the federal government.  7 U.S.C. § 136v(b).  This includes "judge-made rules" in addition to statutes and regulations.  *Bates*, 544 U.S. at 443.  However, this preemption is limited in scope to judge-made requirements for "labeling or packaging," where said requirement is more than is required under FIFRA.  *Id.* at 444.

The Supreme Court's decision in *Bates* instructs courts as to what types of claims are preempted by FIFRA.  In *Bates*, the Supreme Court held that, "rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirement for labeling or packaging."  544 U.S. at 444 (finding that the petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty were not pre-empted).  The Supreme Court further explained that "the proper inquiry calls for an examination of the elements of the common-law duty at issue," not an examination of the potential effects of imposing those common law requirements.  *Id.* at 445.  The Third Circuit, in examining Congress's purpose in passing FIFRA, additionally explains that Congress meant only to provide uniformity in labeling, and did not intend "to regulate sales literature generally and the legal obligations that can arise therefrom."  *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 217 (3d Cir. 2010).

6

If Plaintiffs' claims amount to labeling requirements, they will be preempted by FIFRA.  However, most of Plaintiffs' claims do not address the Products' labels at all.  Instead, Plaintiffs are alleging that the Products were defective and injured their pets.  Essentially, the only claims in danger of preemption are Plaintiffs' claims of fraud and misrepresentation by Defendants under the California Unfair Competition Law ("UCL") and the California Consumer Legal Remedies Act ("CLRA").

The Third Circuit has recently addressed when a fraud claim under the New Jersey's consumer fraud statute is preempted by FIFRA.  *See Indian Brand Farms*, 617 F.3d 207.  This case is additionally instructive here, since Plaintiffs' causes of action under the UCL and CLRA are similar to the causes of action provided under the New Jersey Consumer Fraud Act ("NJCFA").  In *Indian Brand Farms*, the Third Circuit found that the plaintiffs' claim was not preempted as it was based on statements made by the defendant in a marketing brochure, which did not qualify as "labeling" under FIFRA.  *Id.* at 218.  Plaintiffs' consumer fraud allegations here are that Defendants "marketed and continued to market [the Products] to consumers notwithstanding their knowledge that the products were unreasonably dangerous, if not deadly, to the pets upon which they were to be used."  (Compl. ¶ 66.)  Furthermore, Plaintiffs allege that "by selling their products to the general public, [Defendants] both explicitly and implicitly represented that such products were safe and would not cause harm to pets."  (Compl. ¶ 67.)  Like in *Indian Farms*, taken as a whole, Plaintiffs' allegations are not based on statements made

7

on the Products' labels. Therefore, at least at this juncture, the Court finds Plaintiffs' claims are not preempted by FIFRA.

### C. Count One – Violation of the California Unfair Competition Law

Plaintiffs allege that Defendants violated the UCL by marketing their products as safe when in actuality they posed an unreasonable risk of harm. (Compl. ¶¶ 65-68.) As a result of Defendants' unconscionable and deceptive actions, Plaintiffs claim they suffered ascertainable harm; first, they did not receive the full value of Defendants' products because of the unreasonable risk they posed to their pets, and second, the product damaged their pets by causing sickness and/or death. (Compl. ¶ 69.)

#### 1. Choice of Law

Since Plaintiffs' claims are all based on state law, at some point the Court must determine which state's law to apply to Plaintiffs' claims. A federal court sitting in diversity must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 383 U.S. 487, 496 (1941). California applies a three-step "governmental interest analysis," looking to (1) whether an actual conflict between the potential laws exist, (2) whether each of the conflicting states has an interest in having its own law applied, and (3) select the law of the state whose interests would be "more impaired" if its law were not applied. *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 919-920 (2001). Plaintiffs argue that this analysis should be done at the class certification stage. (Pls.' Opp. Br. at 10.)

8

Defendants, however, are not moving for a choice of law determination at this time. Instead, they are simply stating that regardless of what law should apply to the non-California Plaintiffs, Plaintiffs have failed to allege any facts that could support the application of California law specifically to such nonresident Plaintiffs. Defendants claim that only Plaintiff Sunny Johannson, a resident of California, has alleged a contact with California, as required to state a claim under the UCL. *See Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 598 (C.D. Cal. 2008). The only other connection to California is through Defendant Central Pet, which Defendants claim is "largely irrelevant" since Central Pet is just the parent company of Farnam. (Defs.' Moving Br. at 7.) Plaintiffs, on the other hand, contend that Central Garden is the "principal defendant in this action" and the "nerve center" for Defendants' "strategic planning." (Pls.' Opp. Br. at 6.) Since Plaintiffs have at least alleged a connection between the allegations and California through Defendant Central Pet, the Court cannot make a determination without a full choice-of-law analysis as to whether California law can be applied to non-California Plaintiffs. Since the choice-of-law issue has not yet been fully briefed and may be premature, the Court declines to address the full analysis at this time.

  **2.**  **UCL Claim**

To state a claim under the UCL, a Plaintiff must allege a (1) unlawful, (2) unfair, or (3) fraudulent business act or practice; or, a Plaintiff must allege a (1) unfair, (2) untrue, or (3) misleading advertising. Cal. Bus. & Prof. Code § 17200. Here, Plaintiffs allege that Defendants' conduct constituted unconscionable, unfair, unlawful and

deceptive commercial practices. (Compl. ¶ 68.) Specifically, Plaintiffs allege that Defendants knew their product "posed an unreasonable risk of harm to pets," and yet failed to disclose such information, thereby "explicitly and implicitly represent[ing] that such products were safe and could not cause harm to pets." (Compl. ¶ 67.)

Furthermore, any claim under the UCL based on fraudulent conduct must comply with Rule 9(b)'s heightened pleading requirements, which require that plaintiffs "state with particularity the circumstances constituting fraud or mistake." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003) (if a claim is "grounded in fraud" or "sound[ing] in fraud," then "that claim as a whole must satisfy the particularity requirement of Rule 9(b)"). Plaintiffs argue that Rule 9(b)'s heightened pleading requirements apply only to their allegations of fraudulent business practices under the UCL's third prong, and not as to their allegations of unlawful and/or unfair business practices under the first two prongs of the UCL.

The Court finds that since Plaintiffs' essential factual allegation under the UCL is that Defendants deceived consumers by selling an unsafe product, the UCL claim as a whole is "grounded in fraud," even though Plaintiffs are also alleging unlawful and/or unfair business practices under the first two prongs. *See Vess*, 317 F.3d at 1103 (Rule 9(b) applies to UCL claims as a whole where the allegations refer to a "unified course of fraudulent conduct"). Thus, in order to satisfy the Rule 9 specificity requirement, Plaintiffs must either expressly plead the "date, place or time" of the fraud, or substantiate their claims through alternative means of precision. *See Frederico v. Home*

*Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (to satisfy Rule 9(b), a plaintiff must "inject precision or some measure of substantiation into a fraud allegation").

Plaintiffs argue that their pleading satisfies the Rule 9(b) pleading standard. (Pls.' Opp. Br. at 8.) They point out that since the fraudulent conduct alleged is essentially fraudulent omissions, it would be impossible for Plaintiffs to plead the specific date, place or time of the omissions. (*Id.*) Instead, Plaintiffs allege with specificity the date of application of the product on the pets, the reaction the pets had to the product, and the general dangers associated with products containing Pyrethrin. (Compl. ¶¶ 13-50.) The Court finds that this is specific enough to satisfy the heightened pleading requirements of Rule 9(b). In order to satisfy Rule 9(b) when pleading a failure to disclose claim, a plaintiff must "allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *Lupino v. Mercedes-Benz USA, LLC*, Civ No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010) (quoting *In re General Motors Corp. Anti-Lock Brake Products Liability Litigation*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997)). While the facts alleged in the Complaint could be more specific, they are sufficient enough to withstand dismissal. As such, Defendants' motion to dismiss as to Count One is denied.

However, the Court notes that Plaintiffs have only satisfied Rule 9(b) as to any alleged omissions or failures to disclose. Should Plaintiffs wish to challenge any affirmative representations by Defendants as fraudulent, they must plead the "particular

11

circumstances surrounding such representations." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Plaintiffs have failed to identify any specific statements made by Defendants underlying their claim, let alone where and when they were exposed to such statements. *See id.* Therefore, should Plaintiffs choose to allege affirmative misrepresentations as well as non-disclosures to support their UCL claim, they will need to amend the complaint to provide further detail as to any such misrepresentations in order to satisfy Rule 9(b).

        **D.**        **Count Two – Breach of Implied Warranty of Merchantability**

A warranty of merchantability is implied in every contract for the sale of goods. Cal. U. Com. Code § 2314. In order for the implied warranty of merchantability to be breached, the product at issue must have not been fit for the ordinary purpose for which such goods are used. Cal. U. Com. Code § 2314(2)(c). Plaintiffs allege that the Defendants' goods are unmerchantable, and that all Plaintiffs and putative class members are entitled to revoke their acceptance of these goods. (Compl. ¶¶ 72-73.) As such, Plaintiffs allege they are entitled to a refund and any incidental and consequential damages resulting from their purchases. (Compl. ¶¶ 74-75.)

Defendants argue that Plaintiffs have not stated a breach of implied warranty claim, contending that the product was indeed "fit for its ordinary purpose." However, while the product may have been effective at killing fleas and ticks, this effectiveness ceases to matter if the product was "unreasonably dangerous" while doing so. (Pls.' Opp. Br. at 12). The Court agrees with Plaintiffs that their factual allegations state a claim for

breach of implied warranty of merchantability, as they allege that the Products do not *safely* kill fleas and ticks and are therefore unfit.

Defendants further contend that Plaintiffs' claim still fails under California law, as they have not alleged privity between themselves and the Defendants. Generally, "[p]rivity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability." *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058 (2008). However, an exception exists for cases where foodstuffs, drugs, or pesticides have caused personal injury. *Arnold v. Dow Chemical Co.*, 91 Cal. App. 4th 698, 720-21 (2d. Dist. 2001). Defendants argue that this exception is limited to situations where said foodstuffs, drugs or pesticides "were defective and injured *the plaintiffs* who had ingested them." *Western/Scott Fetzer Co v. Braden Partners, LP*, No. C-03-4114, 2006 U.S. Dist. LEXIS 58969, at *11 (N.D. Cal. Aug. 7, 2006) (emphasis added). Here, Plaintiffs' pets were injured, not Plaintiffs themselves. The Court agrees with Defendants that the privity exception as to pesticides does not apply here, and Plaintiffs' breach of implied warranty of merchantability claim as pleaded under California law is dismissed without prejudice.

### E. Count Three – Violation of the Magnuson-Moss Warranty Act

Plaintiffs allege that Defendants expressly and impliedly warranted the Products as safe, merchantable, and fit for a particular purpose, and breached those warranties in violation of the Magnuson-Moss Warranty Act ("MMWA"). *See* 15 U.S.C. § 2310(d)(1). Defendants argue that the statutory warranty claim fails because the only warranty

13

identified is the implied warranty of merchantability, which fails and cannot support a statutory warranty claim.[4]

A claim under the MMWA relies on the underlying state law claim. *See Bailey v. Monaco Couch Corp.*, 350 F.Supp.2d 1036, 1040 (N.D. Ga. 2004) ("The Act was intended to supplement, not supplant, state law. Therefore, unless the Act expressly prescribes a regulating rule, courts should apply state law to written and implied warranty claims made under the Act.") At this time, Plaintiffs have pleaded their underlying implied warranty claim under California state law. Since the Court has dismissed Plaintiffs' implied warranty claim without prejudice for lack of privity, Plaintiffs' MMWA claim is likewise dismissed without prejudice.

### F. Count Five (Labeled Count Six) – Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)

Plaintiffs allege that Defendants violated the CLRA by selling flea and tick control products to Plaintiffs with misrepresentations regarding the "source, sponsorship, approval or certification;" and by misrepresenting that the goods are "of a particular

---

[4] The Court notes that Defendants also argue that the Court has no jurisdiction to hear the MMWA claim. However, Plaintiffs have properly identified diversity jurisdiction pursuant to 28 U.S.C. § 1332(d) as supporting jurisdiction in this case, meaning the Court need not rely on jurisdiction under MMWA. *See Chavis v. Fid. Warranty Servs.*, 415 F. Supp. 2d 620, 623 (D.S.C. 2006) (finding that even where a MMWA claim fails to conform to § 2310(d)(3), § 2310(d)(1)(A) mandates that jurisdiction lies in any court of "competent jurisdiction"); *see also Barnes v. West, Inc.*, 249 F. Supp. 2d 737, 739 (E.D. Va. 2003) ("claims that cannot independently be heard in federal court [under the MMWA]...can still be heard in federal court in circumstances where supplemental jurisdiction is properly exercised"); *Wetzel v. American Motors Corp.*, 693 F. Supp. 246, 248 (E.D. Pa. 1988) (§ 2310(d)(3) does not preclude federal jurisdiction where the MMWA claim is pendent to state claims supporting diversity jurisdiction).

standard, quality or grade..." (Compl. ¶ 90.) Essentially, Plaintiffs' CLRA claim is premised on the same misrepresentations and omissions underlying their UCL claim in Count One.

### 1. Choice of Law

In its analysis of Count One above, the Court has already determined that a full choice-of-law analysis would be premature at this juncture. However, as in their argument regarding the UCL claim, Defendants contend that regardless of what law should apply to the non-California Plaintiffs, Plaintiffs have failed to allege any facts that could support the application of California law to such nonresident Plaintiffs. Specifically, Defendants argue that to state a claim under CLRA, the challenged conduct must have taken place in California or the Plaintiffs must have been injured in California. *See Morgan v. Harmonix Music Sys.*, No. C-08-5211, 2009 U.S. Dist. LEXIS 57528 at * 6-7 (N.D. Cal. July 7, 2009). However, as discussed under Count One above, Plaintiffs contend that Central Garden is the "principal defendant in this action" and the "nerve center" for Defendants' "strategic planning." (Pls.' Opp. Br. at 6.) Since Plaintiffs have at least alleged a connection between California and the allegedly fraudulent conduct, the Court cannot make a determination without a full choice-of-law analysis as to whether California law can be applied to non-California Plaintiffs. *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (finding that though plaintiffs' alleged connections to California may prove to be specious or irrelevant, they were sufficient to support CLRA claims by non-California plaintiffs at motion to dismiss stage).

15

### 2. CLRA Claim

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer." Cal. Civ. Code § 1770. Like Plaintiffs' claim under the UCL, their claim under the CLRA based on fraudulent conduct must comply with Rule 9(b)'s heightened pleading requirements, which require that plaintiffs "state with particularity the circumstances constituting fraud or mistake." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003). Thus, Plaintiffs must either expressly plead the "date, place or time" of the fraud, or substantiate their claims through alternative means of precision. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (to satisfy Rule 9(b), a plaintiff must "inject precision or some measure of substantiation into a fraud allegation"). Defendants argue that Plaintiffs have failed to satisfy Rule 9(b)'s particularity requirement as they have not identified the specific alleged misrepresentations that form the basis of their claim. Furthermore, since Plaintiffs must prove reliance to support a CLRA claim, Defendants contend that Plaintiffs have failed to properly plead reliance on any alleged misrepresentations. The Court disagrees.

Since Plaintiffs' claims are based on alleged non-disclosures, Plaintiffs are held to a somewhat modified Rule 9(b) pleading standard, requiring that they "allege what the omissions were, the person responsible for failing to disclose the information, the context

of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *Lupino v. Mercedes-Benz USA, LLC*, Civ No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010) (quoting *In re General Motors Corp. Anti-Lock Brake Products Liability Litigation*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997)). As discussed above, Plaintiffs have alleged enough facts to satisfy these specificity requirements. Furthermore, reliance on alleged nondisclosures can be presumed if the allegations suggest the omitted facts would have been material to the sale. *Herrington v. Johnson & Johnson Consumer Cos.*, Inc., 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010). Therefore, to plead reliance Plaintiffs must only "plead facts suggesting that the alleged non-disclosures were material." *Id.* Here, while Plaintiffs' allegations could be more specific, the facts as alleged suggest that the alleged non-disclosures were material. In *Herrington*, the plaintiffs failed to show that the levels of 1,4-dioxane and formaldehyde in the defendants' products caused any harm. 2010 WL 3448531, at *8 (finding that, without any allegations of harm, the pleading failed the "objective test for materiality"). In contrast, Plaintiffs here have provided factual allegations regarding how the Product has harmed their pets. These allegations suggest that the omitted facts regarding the safety of the Products are objectively material. As such, Plaintiffs have satisfied Rule 9(b)'s particularity pleading requirements as to any alleged non-disclosures. However, as is the case with Count One, Plaintiffs will need to provide further particularity should they wish to allege any affirmative misrepresentations by Defendants.

### G. Count Six (Labeled Count Seven) – Punitive Damages

Plaintiffs claim that they are entitled to punitive damages because Defendants "have known for many years that their flea and tick treatments are unreasonably dangerous, but continue to sell the products without disclosing the unreasonable risk of harm to companion animals." (Pls.' Opp. Br. at 14.) Defendants argue that Plaintiffs cannot maintain a claim for punitive damages as there is no "stand alone" claim for punitive damages. However, though Plaintiffs' claim for punitive damages could not survive independent from Plaintiffs' allegations of fraud under Counts One and Five, Cal. Civ. § 1294, there is no basis for striking Plaintiffs' request for punitive damages at this juncture since Counts One and Five have survived Defendants' motion to dismiss.

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** as to Counts Two and Three, and Counts Two and Three are **DISMISSED WITHOUT PREJUDICE**. Defendants' motion to dismiss is **DENIED** as to all other Counts. An Order follows this Opinion.

 s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 26, 2011**